## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**FANNIE MOTEN**                                                                        **PLAINTIFF**

**VS.**                                          **NO.  3:10CV00126**

**WARREN UNILUBE, INC.**                                                          **DEFENDANT**

### <u>ORDER</u>

Pending are Defendant's motion for summary judgment (docket # 35), Defendant's

motion in limine (docket # 54), and Plaintiff's motion in limine (docket # 56).   Following a

review of the pleadings and exhibits filed and after hearing oral argument on June 14, 2011, the

Court finds that Defendant's motion for summary judgment, should be and hereby is,

GRANTED.  The pending motions in limine are DENIED AS MOOT.

### <u>Facts</u>

Plaintiff, Fannie Moten, is a former employee of Warren Unilube whose employment was

terminated on April 27, 2009.   Plaintiff has brought claims alleging that she was discharged

because of her age and sex and in retaliation for complaining to her supervisor about

discrimination in violation of  Title VII of the Civil Rights Act of 1964, as amended ("Title

VII"), 42 U.S.C. §2000e, *et. seq*.; the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. §623, *et. seq*.; and the Arkansas Civil Rights Act ("ACRA"), A.C.A. §16-123-101, *et.seq*.

 Warren Unilube argues that it is entitled to summary judgment on each of Moten's claims.

Warren Unilube is headquartered in West Memphis, Arkansas, and is primarily

engaged in the manufacture, distribution and private-label packaging of petroleum products and

related products.   The Warren Unilube plant facilities are divided by railroad tracks and

approximately one-half  mile.  The two facilities are referred to as the Jefferson Street and 8th

Street locations.  Both locations have production facilities, warehouses and maintenance shops.

The Jefferson Street and 8th Street Warehouses are managed by Craig Stauffer, Warren Unilube's

Transportation Manager, but the two Warehouses have different supervisors and employees.

James Mengarelli is the supervisor at the 8th Street Warehouse, and Clarence Grandberry is the

supervisor at the Jefferson Street Warehouse.

All of the employees in the warehouses were required to operate a forklift and all of these

employees had the job title "Operator."  Plaintiff asserts that the warehouse employees did not

have job classifications and that all the positions were interchangeable.

Plaintiff, Fannie Moten ("Moten"), was employed by Warren Unilube in its 8th

Street Warehouse as an Operator.  Near the end of 2008 or early 2009, Moten (female, then age

60) was assigned to perform "checker" duties.  Plaintiff admits that she performed checker duties

about half of the time and that she also drove a forklift.  She claims that the checker duties were

temporary.

In general, the employees in the warehouses were responsible for assembling orders for

different customers using a Loading Ticket that  would list all of the items that the customer had

ordered.  The Operator would load the items on one or more pallets to be loaded into a truck for

shipping. The checker would check the order before shipping to be sure that the items to be

shipped matched those on the Loading Ticket.  Defendant contends that prior to Moten being

assigned to perform the checker duties, checking had been done somewhat haphazardly, with

operators checking each other's loads, or loads not being checked at all.  After some incorrect

shipments and customer complaints, the decision was made to have one operator act as the

checker for all (or nearly all) of the loads.  Defendant asserts that approximately one year before

Moten's termination, Stauffer (male, then age 49),  the Transportation Manager, approached

Roshel Howard (female, then age 47), another 8th Street Warehouse employee, to perform the

checker duties, but Howard declined.   Mengarelli (male, then age 39), the 8th Street Warehouse

supervisor, then asked Moten to perform the checker duties.  Moten began performing those

duties, spending at least 50% of her time doing checking. Moten specifically denies that the

"checker" position was a different position and claims that all employees did forklift operating or

checking duties both before and after her termination.   Moten admits that she performed more

checking than the other employees.

On or about April 3, 2009, Moten was involved in a disagreement with William

Parks (male, then age 51), another operator at the 8th Street Warehouse during which the two

exchanged vulgarities.  Moten claims that Parks repeatedly called her an "old bitch" during this

altercation.  Parks was a "lead" employee but he was not a supervisor.  Prior to this incident,

Parks had never made any comments to Moten that Moten found to be offensive or inappropriate.

After the incident, Moten went to talk to her supervisor, Mengarelli, about the incident.

Mengarelli then went to talk to Parks. At some point during this time, Moten went to Stauffer

(male, then age 49) regarding the incident.   Mengarelli called Moten and Parks to his office to

discuss the incident and they were told that their language was inappropriate and that they both

should cut it out.  Moten complains that Mengarelli and Stauffer do not treat women the same as,

or as well as, men.  Moten claims that she felt Parks had discriminated against her based on age

and sex.  Moten admits that after the meeting, Parks never made any further comments to her that

she found inappropriate.

In December of 2008 or January of 2009, Warren Unilube learned that it had

3

not been successful on a bid to continue business with a major customer, Advance Auto Parts ("Advance"), such that Warren Unilube would lose at least half of its usual revenue from Advance starting in April of 2009.  Advance had previously accounted for a third of Warren Unilube's revenues from its West Memphis facility.   The Jefferson Street Warehouse handled a majority of the Advance account, however, the 8th Street Warehouse also handled some of the account.  In December 2008, Warren Unilube had seen an additional overall decline in all its business.  The loss of Advance's business, coupled with generally declining business and revenues, led Warren Unilube to explore various means of controlling costs.  Warren Oil, Warren Unilube's parent company, directed Warren Unilube to make across the board changes and cuts in response to the decline in business.

As a result, Warren Unilube generally cut the workweek from 40 to 32 hours (a Monday through Thursday schedule), with a rotating "skeleton crew" on Fridays.  Defendant contends that it also reduced the number of temporary employees that it used, going from using 22 temporary employees in the warehouses in 2008 to only two in early 2009, with no temporary employees in the warehouses from May until November of 2009.  Moten agrees that the work week was shortened but claims that some people worked a five day week.  Moten also claims that temporary employees remained throughout the facility after the alleged layoff.

It is undisputed that during this time period, Warren Unilube also opted not to replace a number of employees who were either terminated or resigned, such that Warren Unilube's total workforce dropped from 184 full-time employees in January of 2009 to 152 full-time employees in December of 2009, a 17% reduction.

Warren Unilube claims that in making the termination decisions, it explored whether

certain positions could be eliminated or restructured.  In reviewing the Warehouse operations,

Stauffer determined that by restructuring operations, two positions could be eliminated from the

warehouses.  Stauffer determined that the lead operator at the 8th Street Warehouse could

perform the checker duties that Moten was then performing. Warren Unilube argues that making

this change would eliminate a position, and it would make operations consistent between the 8th

Street and Jefferson Street Warehouses, given that the lead operator at the Jefferson Street

Warehouse was then performing the checking duties at that warehouse. Stauffer also determined

that one operator position could be eliminated from the Jefferson Street Warehouse.  Stauffer

recommended to Dale Wells (male, then age 58), then the President of Warren Unilube, that the

positions of Moten (the checker at the 8th Street Warehouse) and DelShawn Parnell (male, then

age 32), an operator at the Jefferson Street Warehouse, be eliminated. On April 27, 2009, Warren

Unilube informed Moten that due to a decline in business, her position was being eliminated.

That same day, Warren Unilube also informed Parnell that due to a loss of sales revenue, his

position was being eliminated.

Moten argues that only she and two other employees, Gina White and Delshawn Parnell

were terminated and Defendant failed to rehire eleven temporary workers.  Moten claims that

there was no actual reduction in force. Further, Moten argues that people with less time and skill

were retained by Warren Unilube.  Moten denies the reasons offered by Defendant for her

termination and claims that she was fired due to her age, gender and because she complained of

discrimination.   Further, Moten claims that Leotis Powell (male, then age 52) was moved from

the Jefferson Street to the 8th Street location to do Moten's job and a temporary employee was

hired on permanently at Jefferson Street.    It is undisputed that Powell did no checking at the 8th

5

Street Warehouse.  Powell was transferred back to the Jefferson Street Warehouse approximately

two months later.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining
> whether there is a need for trial -- whether, in other words, there
> are any genuine factual issues that properly can be resolved only by
> a finder of fact because they may reasonably be resolved in favor of
> either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

6

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### Discussion

In sex and age discrimination cases, a plaintiff may survive an employer's motion for summary judgment in one of two ways.  First, the employee may produce direct evidence of discrimination.  Second, "[i]f the employee lacks direct evidence of discrimination, he can survive summary judgment by showing a genuine dispute for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).  Here, Plaintiff presents no direct evidence of discrimination, accordingly, the Court will apply the analytical framework set forth in *McDonnell Douglas.*[1]  Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McGinnis v. Union Pacific R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007).  The Supreme Court explained the plaintiff's burden "is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253(1981). The plaintiff's successful establishment of a *prima facie* case creates a presumption of unlawful discrimination and shifts the burden to the defendant, who must then articulate a legitimate, nondiscriminatory reason for its actions. *Id.*  Finally, if the defendant proffers such a reason, the plaintiff must then show that the defendant's proffered reason is merely a pretext for discrimination. *Id.*

---

[1]Plaintiffs' claims under the Arkansas Civil Rights Act are also governed by the same standard.  *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

The ADEA prohibits employers from discriminating against individuals on the basis of age with regard to their "compensation, terms, conditions, or privileges of employment." *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist*., 421 F.3d 649, 653 (8th Cir.2005) (quoting 29 U.S.C. §§ 623(a)(1), 630( 1 )). To establish a prima facie case of age discrimination in a reduction in force, a plaintiff must show that she (1) was at least forty years old, (2) suffered an adverse employment action, (3) she met the job qualifications, and (4) there is some additional evidence that age was a factor in the employer's termination decision. *See Ward v. Int'l Paper Co.*, 509 F. 3d 457, 460 (8th Cir. 2007). Plaintiff argues that the burden of establishing some additional evidence that age was a factor in the termination decision should not apply in this case as she alleges that no actual reduction in force occurred. If the Court were to agree, Moten would be required to produce evidence that she was replaced by a substantially younger worker. *See Morgan v. A.G. Edwards & Sons, Inc*., 486 F.3d 1034, 1039 (8th Cir. 2007). Under either analysis, the Court finds that Moten failed to establish a *prima facie* case.

A plaintiff can demonstrate that age was a factor in the termination decision by "presenting either statistical evidence (such as a pattern of forced early retirement or failure to promote older employees) or 'circumstantial' evidence (such as comments and practices that suggest a preference for younger employees.)" *Chambers v. Metro. Prop. & Cas. Ins. Co.*,, 351 F. 3d 848, 855 (8th Cir. 2003), citations omitted. Moten argues that she was replaced by a younger worker, Leotis Powell (then age 52), an employee who was transferred from the Jefferson Street Warehouse to the 8th Street Warehouse after her termination. She argues that this proves both that she was replaced by someone substantially younger and provides circumstantial evidence that age was a factor in the alleged reduction in force.

8

It is undisputed that Powell was transferred to the 8th Street Warehouse for approximately two months and performed forklift duties.  During the time Powell worked in the 8th Street Warehouse, he did not perform any checking duties.  The fact that a younger employee assumed some of Moten's job duties is "insufficient by itself, however, to establish a prima facie case of age discrimination."  *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997).  Further, Powell, age 52, was only eight years younger than Moten.   The Eighth Circuit Court of Appeals has found that a *prima facie* case is "not particularly strong" and "may not be sufficient to infer age discrimination" where the age difference was nine years, *Girten v. McRentals, Inc*., 337 F.3d 979 (8th Cir. 2003); a five year disparity is insufficient to infer discrimination,  *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412-13 (8th Cir.1997); but a fourteen year age difference is sufficient to infer age discrimination, *Keathley v. Ameritech Corp*., 187 F.3d 915 (8th Cir.1999). The Court finds that the eight year age difference here, is not particularly strong and is insufficient to establish a *prima facie* case.   *See Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)(any age disparity less than ten years is presumptively insubstantial). Further, Moten was not treated differently than younger employees as Delshawn Parnell, male, then 32 years old, was terminated at the same time and for the same reason as Moten, undermining Moten's claim that age was a factor in her termination.

Additionally, the Court finds that Warren Unilube has set forth a legitimate nondiscriminatory reason for Moten's termination and Moten cannot show pretext.   Warren Unilube contends that in response to the loss of its major customer, Advance Auto Parts coupled with an overall decline in all its business it was required to explore various means of controlling costs.  As a result, Warren Unilube terminated Moten, Gina White and Delshawn Parnell and

failed to rehire eleven temporary workers.  During this time period, Warren Unilube also opted

not to replace a number of employees who were either terminated or resigned, such that Warren

Unilube's total workforce dropped from 184 full-time employees in January of 2009 to 152

full-time employees in December of 2009, a 17% reduction.   Moten argues that she was replaced

by Leotis Powell and temporary employee, Excell Robertson, was made a permanent employee at

the Jefferson Street Warehouse after her termination.  Moten claims this results in no "actual loss

of personnel."  In fact, warehouse personnel was reduced by two employees, Moten and Parnell

as both Powell and Robertson were employed at the time of her termination.  Additionally, it is

undisputed that Warran Unilube's total workforce dropped by 17% as set forth above.  The Court

notes that Warren Unilube's exercise of business judgment "is not a proper subject for judicial

oversight."  *Regel v. K-Mart Corp*, 190 F.3d 876, 880 (8th Cir. 1999).   The Court finds that

Warren Unilube has articulated a legitimate nondiscriminatory reason for Moten's termination.

*See Rahlf v. Mo-Tech Corp., Inc*., ____ F.3d ____, 2011 WL 2375942 (8th Cir. 2011).

       In an effort to demonstrate pretext, Moten argues that no actual reduction in force

occurred; she was replaced by Powell and temporary employee, Robertson was hired as a

permanent employee after her termination; subjective criteria was used to determine which

employees to terminate and Warren Unilube offered shifting explanations for her termination.

As set forth herein, it is undisputed that Warren Unilube reduced its workforce in 2009 by 17%.

Powell did not perform checking duties and Moten performed more checking than any other

employee and undisputedly performed at least 50% checking.  Additionally, Powell was only

temporarily placed at the 8th Street Warehouse.  Further, Parnell, a 32 year old male, was

terminated at the same time as Moten and based on the same decline in business.  Warren

Unilube consistently maintained that the termination of Moten, Parnell and White, was a result of a decline in revenue and loss of business. Stauffer determined that the checker position could be eliminated at the 8th Street Warehouse and an Operator position could be eliminated at the Jefferson Street Warehouse.  Stauffer's decision to eliminate Moten's position was based on his determination that the checker duties could be performed by the lead and other operators and in doing so, the 8th Street Warehouse operations would be more consistent with the Jefferson Street Warehouse.  As the checking duties were assigned to Moten and she was the primary employee performing these duties, the loss of her position resulted in her termination.  Moten offers no evidence to suggest that subjective criteria was used to reach this determination.  Additionally, the testimony, of Wells and Stauffer may conflict in a few respects, but does not amount to a "shifting explanation" for Moten's termination.  Both Wells and Stauffer testify that the termination resulted from the elimination of Moten's position, based on the determination that the checker duties could be performed by the lead and other operators and in doing so the plants would operate more consistently.  *See E.E.O.C v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006)(noting that the change in position must be substantial to equate to a "shifting explanation" giving rise to an inference of pretext).   The Court finds that Moten has failed to demonstrate pretext.

Moten's claims of gender discrimination fail for the same reasons.  Moten offers no additional evidence to support her claim that her termination was based on gender.  For the reasons set forth above, Plaintiff's claims for gender discrimination fail.

A plaintiff may establish a *prima facie* case of retaliation by showing that (1) the plaintiff engaged in a statutorily protected activity, (2) an adverse employment action was taken against

her, and (3) a causal connection exists between the two events.  *Gilooly v. Missouri Dept. of Health and Senior Services*, 421 F.3d 734, 739 (8th Cir. 2005).  Moten must offer some evidence that she was engaged in a statutorily protected activity.  Here, Plaintiff cannot do so.  The Eighth Circuit Court of Appeals has held that a plaintiff "need not establish that the conduct he opposed was in fact prohibited under Title VII to satisfy the first element . . . [he] must simply prove [he] had a good faith reasonable belief that the underlying challenged conduct violated [Title VII].  *Brannum v. Missouri Dep. Of Corrections*, 518 F. 3d 542 (8th Cir. 2008) citations and internal quotations omitted.  Moten claims that she was terminated in retaliation for complaining about the incident in which she and Parks exchanged vulgarities.  However, this single, isolated incident is insufficient to support a claim for retaliation and is insufficient to support an objectively reasonable belief that it amounted to unlawful harassment.  *See id.*  Further, even if Moten could establish a *prima facie* case of retaliation, Warren Unilube has articulated a legitimate, non-discriminatory reason for her termination and Moten has not demonstrated pretext.

<u>Conclusion</u>

For the reasons set forth above, Defendant's motion for summary judgment is granted, docket # 35.  The remaining motions are denied as moot.

IT IS SO ORDERED this 21st day of June, 2011.

James M. Moody
United States District Judge

12